# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

LAODE NASIRUN,

     Petitioner,

v.

                             CASE NO. 8:05-CV-411-T-27MSS
                             Crim Case No.  8:99-CR-367-T-27MSS

UNITES STATES OF AMERICA,

     Respondent.

_____/

## ORDER

**BEFORE THE COURT** is Petitioner's Motion to Vacate Set Aside, or Correct

Sentence Pursuant to 28 U.S.C. § 2255 (CV Dkt. 1), Petitioner's Memorandum Supporting the §

2255  Motion (CV Dkt. 2), the Government's Response (CV Dkt. 13), and Petitioner's reply (CV

Dkt. 17).  Upon review, the Court finds that the motion will be denied because the grounds raised

are deficient.

## Background

Petitioner, LAODE NASIRUN (hereinafter"Petitioner"), was arrested on January 18, 2001.

He was charged by a Second Superseding Indictment with conspiring to import cocaine and

importing cocaine into the United States in violation of Title 21, United States Code, Sections 952,

963, 960(b)(1)(B)(ii), and Title 18, United States Code, Section 2, and conspiring to distribute

cocaine and possessing cocaine with the intent to distribute in violation of Title 21, United States

Code, Sections 841(a)(1), 841 (b)(1)(A)(ii)(II), 846, and Title 18, United States Code, Section 2 (CR

Dkt. 44). On April 11, 2002, a jury found Petitioner guilty as charged (CR Dkt. 64). On August 15, 2002, the Court adjudicated Petitioner guilty and sentenced him to life in prison and five years of supervised release (CR Dkt. 81). Petitioner appealed, and on July 3, 2003, the Eleventh Circuit Court of Appeals affirmed Petitioner's convictions and sentences (CR Dkt. 107); *See United States v. Nasirun*, 2003 U.S. App. LEXIS 20512 (11th Cir. July 3, 2003). The Supreme Court denied certiorari on March 8, 2004. *Nasirun v. United States*, 541 U.S. 905 (2004)[Table]. Petitioner filed his § 2255 motion on February 28, 2005. [1] (CV Dkt. 1). The § 2255 motion is timely.

## Discussion

In his § 2255 petition, Petitioner raises (6) grounds:

1) counsel was ineffective for failing to argue that the Court lacked personal, subject matter, and territorial jurisdiction;

2) his conviction was obtained pursuant to a defective indictment in violation of the Fifth Amendment to the United States Constitution;

3) the prosecutor violated *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to disclose evidence favorable to Petitioner's defense;

4) he was denied a fair trial due to the prosecutor's misconduct at trial;

5) counsel was ineffective at trial (eighteen sub-claims); and

6) trial counsel was ineffective for failing to object to Petitioner's life sentence because the jury never determined the quantity of drugs, and appellate counsel was ineffective for failing to raise this claim on appeal.

---

[1] While the motion was actually received and filed by the Clerk of Court on March 3, 2005, under the "mailbox rule," the motion is deemed filed on February 28, 2005, the date the motion was signed and presumably submitted to the prison authorities for mailing. *See Adams v. United States*, 173 F.3d 1339, 1341 (11th Cir. 1999)(under the "mailbox rule," a pro se prisoner's motion to vacate is deemed filed on the date that he signed, executed, and delivered his petition to prison authorities for mailing).

**Ground One**

Petitioner asserts that his counsel was ineffective for failing to raise, at trial and on appeal, the claim that the Court lacked jurisdiction over his case. He argues that the Court did not have jurisdiction because there was no evidence that the cocaine which was seized was to be distributed in the United States. To prevail on a claim of ineffective assistance of counsel, Petitioner must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Petitioner must demonstrate that his attorney's "representation fell below an objective standard of reasonableness" considering the circumstances as they existed at the time of representation. *Id.* at 687-88. This requires him to overcome a strong presumption that his attorney's performance was within the range of competence demanded of attorneys defending criminal cases. *Id.* at 689. Even if Petitioner can show that counsel performed incompetently, he must also show that he was prejudiced in such a manner that, but for counsel's errors, there exists a reasonable probability that the outcome of the proceeding would have been different. *Id.* at 688, 694. A "reasonable probability" is one that is ". . . sufficient to undermine confidence in the outcome" of the proceedings. *Id.* at 694.

In assessing a lawyer's performance, "(c)ourts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001). "The inquiry into whether a lawyer has provided effective assistance is an objective one: a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take." *Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318, 1322 (11th Cir. 2002) (citing *Chandler*, 218 F.3d at 1315). Moreover, where the record is incomplete or unclear about counsel's actions, it is presumed that counsel exercised

3

reasonable professional judgment. *Chandler*, 218 F.3d at 1314-15.

Because the Second Superseding Indictment charged Petitioner with violating laws of the United States, this Court had jurisdiction over Petitioner's actions. *See* 18 U.S.C. § 3231; *see also McCoy v. United States*, 266 F. 3d 1245, 1252 n. 11 (11th Cir. 2001). Moreover, there was evidence introduced at trial that the cocaine was delivered to Miami and removed from the surfboards in Miami (CR Dkt. 98 at 119-20; 124; 128). The failure to raise a meritless claim does not render a counsel's performance deficient. *Chandler v. Moore*, 240 F.3d 907, 917-18 (11th Cir. 2001) (counsel not ineffective for failing to raise a nonmeritorious issue). Therefore, Petitioner's counsel was not deficient for failing to raise the claim that this Court lacked jurisdiction over Petitioner's case.

**Ground Two**

Petitioner asserts that his right to due process under the Fifth Amendment to the United States Constitution was violated when he was convicted on a defective indictment. Petitioner argues that the Second Superseding Indictment was defective because: 1) Counts One and Two were based upon the false testimony of Stuart Mishkin; 2) it was time-barred under the statute of limitation; and 3) Counts One and Three, the conspiracy counts, failed to state that there was at least one co-conspirator with whom Petitioner conspired.

First, Petitioner argues that the indictment is invalid because it was based on Stuart Mishkin's alleged false testimony that Petitioner had told him of a seizure of cocaine in the Netherlands. In *Anderson v. Sec'y for the Dep't of Corr.*, 462 F.3d 1319 (11th Cir. 2006), the Eleventh Circuit Court of Appeals stated "[t]he Supreme Court has not announced a constitutional rule governing what a state prosecutor must do in the event he learns, prior to trial, that a grand jury witness testified falsely[]" and "Justice Rehnquist's comments in *Bracy* seem to suggest Supreme Court precedent

4

would support a holding that an indictment is not invalidated by the grand jury's consideration of perjured testimony." *Id.* at 1326-27. Here, there is no evidence to support Petitioner's claim that Mishkin's testimony was false, or that the prosecutor knowingly used false testimony. Mishkin attributed certain incriminating statements to Petitioner concerning the seizure of 200 kilograms of cocaine as an explanation for why Petitioner did not have Mishkin's fee (CR Dkt. 98 at 30-33). Whether there was or was not a seizure is not material to Mishkin's credibility. What was material is whether the jury believed Mishkin's testimony regarding what Petitioner told Mishkin. Mishkin only testified to what Petitioner told him, not about a seizure he had no knowledge of. Moreover, even if Mishkin's testimony was false, case law suggests that the grand jury's consideration of perjured testimony does not invalidate the indictment.

Second, Petitioner claims the Second Superseding Indictment was time-barred under the statute of limitation. "The general statute of limitations for noncapital offenses is five years. *See* 18 U.S.C. § 3282 ("Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.")." *United States v. Gilbert*, 136 F.3d 1451, 1453 (11th Cir. 1998). "Statutes of limitations normally begin to run when the crime is complete." *Id.* (quoting *Pendergast v. United States*, 317 U.S. 412, 418-20 (1943)). "The statute of limitations for a conspiracy charged pursuant to § 846 is five years. 18 U.S.C. § 3282(a) (1988)...The government satisfies the requirements of the statute of limitations for a non-overt act conspiracy if it alleges and proves that the conspiracy continued into the limitations period." *United States v. Arnold*, 117 F.3d 1308, 1313 (11th Cir. 1997). The Second Superseding Indictment charged Petitioner with conspiring to import cocaine from "the mid-1990's through on

5

or about June 15, 1998." (CR Dkt. 44 at 1-2). The Second Superseding Indictment was returned on

March 13, 2002, well within five years of the commission of the charged conspiracy. (Id.). Therefore,

the Second Superseding Indictment was not time-barred.

Third, Petitioner asserts that Counts One and Three of the Second Superseding Indictment

were defective in that they failed to properly allege the elements of a conspiracy offense because they

failed to identify a co-conspirator with whom Petitioner conspired. Count One alleged that Petitioner

"did knowingly and unlawfully conspire and agree, with other persons both known and unknown to

the Grand Jury, to import..cocaine..." and Count Three alleged that Petitioner "did knowingly and

willfully conspire and agree, with other persons both known and unknown to the Grand Jury, to

distribute..cocaine..." (CR Dkt. 44 at 1-2). "[A]t least two persons are required to constitute a

conspiracy, but the identity of the other members of the conspiracy is not needed, inasmuch as one

person can be convicted of conspiring with persons whose names are unknown." *Rogers v. United

States*, 340 U.S. 367, 375 (1951). "The existence of the conspiracy agreement rather than the

identity of those who agree is the essential element to prove conspiracy." *United States v. Davis*, 679

F.2d 845, 851 (11th Cir. 1982), *cert. denied*, 459 U.S. 1207 (1983). Counts One and Three properly

alleged the elements of conspiracy. The second superseding indictment was not defective and

counsel was not ineffective for failing to challenge it as defective. Accordingly, Ground Two has

no merit and must be denied.

**Ground Three**

Petitioner claims the prosecution withheld evidence favorable to him in violation of *Brady

v. Maryland*, 373 U.S. 83 (1963). Specifically, he claims the prosecution withheld: 1) database

printouts and declaration forms from the U.S. Customs Service and U.S. Immigration regarding his

6

co-conspirators and Anthony Strachan; 2) airplane tickets issued by Air Aruba; 3) information obtained from authorities in the Netherlands pertaining to an alleged seizure of cocaine in Amsterdam; 4) the results of its investigation of the beeper and cellular phone numbers Yasin Beter gave to the prosecution which he claimed were the numbers he would call to contact the individual to whom he would deliver cocaine on Petitioner's behalf; 5) three "Auto Trader" magazines; 6) the testimony of Metin Beter; 7) Petitioner's Western Union money transfer records; 8) the results of its investigation of the Ocean Palm Motel records; 9) copies of affidavits made by witnesses and agents used to support issuance of subpoenas to private entities; and 10) information regarding requests it made to the U.S. Immigration regarding its investigation of Anthony Strachan.

Petitioner did not raise these issues on direct appeal. (*See* CR Dkt. 107). Section 2255 is not intended to be a substitute for direct appeal. *See Lynn v. United States*, 365 F.3d 1225, 1234-35 (11th Cir. 2004); *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994), *cert. denied*, 514 U.S. 1112 (1995). Generally, available challenges to a criminal conviction or sentence must be advanced on direct appeal or else they will be considered procedurally barred in a § 2255 proceeding. *See Cummings v. United States*, 2005 U.S. Dist. LEXIS 36755, 2005 WL 1669015 at *2 (M.D. Fla. 2005) (citing *Mills*, 36 F.3d at 1055). Relief under 28 U.S.C. § 2255 "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988) (quoting *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A Sept. 1981)).

In its response, the government does not assert that Petitioner's claims are procedurally barred (CV Dkt. 13). However, the Court has the discretion to raise the question of procedural default *sua*

*sponte. See Oakes v. United States*, 400 F.3d 92, 97 (1st Cir. 2005)("[W]e hold that a district court has the discretion, in a section 2255 case, to raise questions of procedural default sua sponte, even when the government has filed a reply and eschewed any reference to that defense."); *see also United States v. Willis*, 273 F.3d 592, 596 (5th Cir. 2001)("[A] court may, sua sponte, invoke the procedural default rule as a bar to § 2255."); *Hines v. United States*, 971 F.2d 506, 509 (10th Cir. 1992)(same).

Petitioner's claims in Ground Three are procedurally defaulted and barred from review here because he failed to raise them on direct appeal, as it appears he was aware of the claims at the time of trial or at the time of his appeal.[2] Before Petitioner can raise this claim for the first time in a § 2255 proceeding, he must demonstrate "cause" for his procedural default in failing to raise the issue on appeal and "actual prejudice" resulting from the error. *See United States v. Frady*, 456 U.S. 152, 168 (1982). In order to show sufficient cause for the procedural default, a petitioner must present a showing of some external impediment preventing counsel from constructing or raising the claim. *Weeks v. Jones*, 52 F.3d 1559, 1561 (11th Cir. 1995) (citing *McCleskey v. Zant*, 499 U.S 467 (1991)). The futility of raising a claim does not constitute sufficient cause to excuse the default. *Bousley v. United States*, 523 U.S. 614, 623 (1998). Nor do ordinary mistakes of counsel constitute cognizable cause. *See Murray v. Carrier*, 477 U.S. 478, 487-88 (1986). Petitioner points to no external impediment that prevented him from raising this issue on appeal and thus fails to allege any cause to excuse his default. *See Lynn*, 365 F.3d at 1235, n. 20.

Petitioner appears to allege ineffective assistance of appellate counsel for failing to raise the

---

[2]For example, the database printouts and declaration forms, the cover of the "Auto Trader" magazines, Metin Beter's testimony, and the Western Union records were produced prior to trial or admitted as evidence at trial (*See* CV Dkt. 17 at Ex. D; CR Dkts. 67-68), and Yasin Beter testified at trial regarding "Grizzly's" cell phone and beeper numbers (*See* CR Dkt. 98 at 124).

claims in Ground Three on direct appeal. A claim of ineffective assistance of counsel may fulfill the cause requirement to excuse a procedurally defaulted claim. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). However, counsel has broad discretion to decide what issues to appeal. *See Jones v. Barnes*, 463 U.S. 745, 751-752 (1983). Further, it is very difficult to demonstrate that appellate counsel was incompetent for failing to raise an issue on appeal as "appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985).

On direct appeal of Petitioner's conviction and sentence, counsel contended that this Court abused its discretion (1) in denying him the opportunity to cross-examine a government witness about his prior tax arrearage to impeach the witness as to is motivation for assisting the government and (2) in denying Petitioner a new trial based on the government's late disclosure that its key witness attempted to have other potential witnesses killed (*See* CR Dkt. 107). Petitioner does not show that counsel performed deficiently by not raising the claims in Ground Three on direct appeal and does not show that the claims in Ground Three are clearly stronger than the claims that were raised on appeal. Therefore, Petitioner fails to demonstrate cause for his procedural default, and accordingly, his claims in Ground Three are procedurally barred.

Even if Petitioner could establish cause, he fails to establish prejudice. Under *Brady*, "'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment.'" *Grossman v. McDonough*, 466 F.3d

9

1325, 1341 (11th Cir. 2006), *cert. denied*, 127 S. Ct. 2430 (2007) (quoting *Brady*, 373 U.S. at 87).

To establish a *Brady* violation, a defendant must prove: (1) that the government possessed evidence favorable to the defense; (2) that the defendant did not possess the evidence and could not obtain it with any reasonable diligence; (3) that the prosecution suppressed the evidence; and (4) that a reasonable probability exists that the outcome of the proceeding would have been different had the evidence been disclosed to the defense. *United States v. Schier*, 438 F.3d 1104, 1106, n.1 (11th Cir. 2006) (citing *Moon v. Head*, 285 F.3d 1301, 1308 (11th Cir. 2002)). A "reasonable probability" is one sufficient to undermine confidence in the outcome of the proceeding. *See United States v. Bagley*, 473 U.S. 667, 682 (1985). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). To meet this standard, a defendant need not demonstrate that, after discounting the inculpatory evidence in light of the evidence in question, insufficient evidence existed to convict him. *See Taylor v. Singletary*, 122 F.3d 1390, 1395 (11th Cir. 1997). Rather, the defendant must show that the suppressed evidence, reasonably taken, puts the whole case in such a different light as to undermine confidence in the verdict.

Petitioner fails to demonstrate both that the government suppressed the items of evidence he delineates in Ground Three and that a reasonable probability of a different outcome exists had the government disclosed the evidence to the defense. The government's argument and citations on the merits of these claims are persuasive. With reasonable diligence, Petitioner could have obtained the "Auto Trader" magazines and his own Western Union transactions. The government produced the Customs and Immigration forms, the airline tickets, and Metin Beter's statement. Petitioner fails

10

to demonstrate that the government possessed and suppressed evidence favorable to the defense which the government allegedly received from: 1) the Netherlands authorities regarding the alleged seizure of 200 kilograms of cocaine in the Netherlands; 2) its investigation into "Grizzly's" cell phone and beeper numbers; 3) its investigation of the Ocean Palm Motel Records; 4) the U.S. Immigration Department regarding Anthony Strachan; and 5) witness affidavits which were used to support issuance of subpoenas to various private entities such as Western Union, hotels, Air Aruba, etc.  For those reasons urged by the government, Petitioner has not shown prejudice on each of these claims.  (*See* Dkt. 13 at 10-14).

Petitioner's claims are wholly unsupported by any factual evidence that the Government's actions in the course of his trial were inappropriate in this regard. Accordingly, relief on Ground Three will be denied.[3]

**Ground Four**

Petitioner asserts that he was denied his right to a fair trial and due process because of the prosecutor's misconduct during trial.  As with Ground Three, Ground Four is procedurally defaulted as Petitioner did not raise this claim on direct appeal (*See* CR Dkt. 107), and he fails to show cause for his default.  Even if Petitioner can demonstrate cause, he fails to show any resulting prejudice. Essentially, Petitioner argues that the prosecutor: 1) allowed Yasin Beter, Stewart Mishkin, and the case agents to testify falsely under oath; 2) failed to disclose exculpatory evidence to Petitioner; 3) improperly vouched for the credibility of Stewart Mishkin; 4) improperly inflamed the passions of

---

[3]Because the Court raised the procedural default question *sua sponte*, it will entertain a motion for relief from judgment or order pursuant to Fed. R. Civ. P. 60(b) if Petitioner can demonstrate, with record evidence, cause for his procedural default and actual prejudice.  *See Oakes*, 400 F.3d at 99 (court should give Petitioner notice of raising procedural default issue and afford an opportunity to respond).

the jury by comparing Petitioner to a movie character and intentionally misinterpreting Petitioner's letter to Yasin Beter; and 5) made improper comments before the jury which were not supported by the evidence.

In considering a claim that the prosecutor's comments to the jury during closing argument violated the petitioner's right to a fair trial, federal habeas corpus review is "the narrow one of due process, and not the broad exercise of supervisory power." *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974). To amount to a constitutional violation, the prosecutor's remarks must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id*. at 644. The Court finds that none of the prosecutor's comments infected the trial with unfairness.

Closing argument is intended to "assist the jury in analyzing, evaluating and applying the evidence." *United States v. Pearson*, 746 F.2d 787, 796 (11th Cir. 1984)(quotation omitted). Thus, the prosecutor is not limited to a bare recitation of the facts; he may "comment" on the evidence and may "state his contention as to the conclusions the jury should draw from the evidence." *United States v. Johns*, 734 F.2d 657, 663 (11th Cir. 1984)(quotation omitted).

The prosecutor's comment comparing Petitioner to a character in "Oliver Twist" who was an older man who used young children to steal for him was merely to assist the jury with its evaluation of the evidence which showed that Petitioner used young people to import cocaine into the United States.

Petitioner asserts that the prosecutor commented on facts not in evidence when he stated "he has an auto body shop that he would have employees with the ability to do the same type of handy work required to make surfboards." (CR Dkt. 104 at 27). These comments were proper as Petitioner

12

testified that he owned a body shop and had employees who used fiberglass and sanded it down to fix holes and dents in motor vehicles. (CR Dkt. 95 at 118-120). The prosecutor was merely stating his contention that the jury could infer from the evidence that Petitioner had the ability to conceal drugs inside a surfboard, by filling the hole with fiberglass, consistent with how the cocaine had been concealed in the fiberglass surfboards.

Petitioner argues that the prosecutor improperly vouched for the credibility of Stewart Mishkin when he said that if Mishkin was lying, Mishkin would be an evil and despicable human being. "Attempts to bolster a witness by vouching for his credibility are normally improper and error." *United States v. Sims*, 719 F.2d 375, 377 (11th Cir. 1983) (citations omitted). "When faced with a question of whether improper vouching occurred we ask: 'whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness's credibility.'" *United States v. Castro*, 89 F.3d 1443, 1456-57 (11th Cir. 1996) (quoting *Sims*, 719 F.2d at 377). "In applying this test, we look for whether (1) the prosecutor placed the prestige of the government behind the witness by making explicit assurances of the witness's credibility, or (2) the prosecutor implicitly vouched for the witness's credibility by implying that evidence not formally presented to the jury supports the witness's testimony." Id. at 1457. "The prohibition against vouching does not forbid prosecutors from arguing credibility . . . it forbids arguing credibility based on the reputation of the government office or on evidence not before the jury." *United States v. Hernandez*, 921 F.2d 1569, 1573 (11th Cir. 1991). The challenged remarks neither placed the prestige of the government behind Mishkin, nor implied that evidence not before the jury supported his testimony. The remarks merely highlighted facts that would assist the jury in assessing Mishkin's credibility *after* defense counsel had attacked the veracity of his testimony. The prosecutor's comments regarding Mishkin did not

13

constitute prosecutorial misconduct.

Petitioner claims that the prosecutor intentionally misinterpreted to the jury the meaning of his letter to Yasin Beter. At trial Yasin Beter testified that his interpretation of Petitioner's letter to him "was basically [Petitioner] trying to tell me that I should hang on and, you know, keep quiet..." and that Petitioner would take care of Beter's family (CR Dkt. 98 at 150-51). The prosecutor's comment that the jury should interpret Petitioner's letter as telling Yasin Beter to stay quiet and Petitioner would take care of everything, including Beter's family, was nothing more than an inference arising directly from the evidence produced at trial and "his contention as to the conclusions the jury should draw from the evidence." *See Johns*, 734 F.2d at 663.

The prosecutor's comments during closing argument did not deprive Petitioner of a fair trial or violate due process. Moreover, Petitioner has not shown that defense counsel was deficient for failing to object to the prosecutor's arguments.

Petitioner also argues that he was denied a fair trial when the prosecutor allowed Yasin Beter, Mishkin, and Agent Grant to falsely testify. He claims that the prosecutor knew that Metin Beter, Yasin Beter's brother, had "testimony" that contradicted that of Yasin Beter; Agent Grant falsely testified that "he did not see anything that indicates whether or not Bart and Sempel had any kind of concrete plans to return to the Netherlands" when he seized travel documents from Bart and Sempel indicating that their destination was the Netherlands; and Mishkin falsely testified that Petitioner told him that 200 kilograms of cocaine had been seized in Amsterdam.

"The government has a duty not to present or use false testimony." *Brown v. Wainwright*, 785 F.2d 1457, 1464 (11th Cir. 1986)(citing *Giglio v. U.S.*, 405 U.S. 150 (1972); *Williams v.*

*Griswald*, 743 F.2d 1533, 1541 (11th Cir. 1984)). "The starting point for analyzing whether a prosecutor's knowing use of false testimony invalidates a conviction is *Giglio*." *Id*. at 1463. To establish a *Giglio* violation, a petitioner must show that (1) the testimony was false, (2) the prosecutor knew the testimony was false; and (3) the testimony was material. *Guzman v. State*, 868 So.2d 498, 505 (Fla. 2003). False evidence is material "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976).

Petitioner's allegations do not show false testimony. At best, the testimony could be said to contradict other evidence to some extent. This does not rise to the level of false testimony. Petitioner has not, therefore, established that the testimony was false. Moreover, he has not demonstrated that the prosecutor knew that the testimony was false.

Finally, Petitioner's claim that the prosecutor withheld evidence was addressed in Ground Three of this Order, *supra*.

**Ground Five**

In Ground Five, Petitioner raises eighteen claims of ineffective assistance of counsel.

(1) Petitioner claims counsel was ineffective in failing to locate Jurgan Bart and Hendrikje Sempel who he claims would have exonerated him. Petitioner does not allege what efforts his counsel made to locate these individuals or sufficiently proffer the testimony they would have provided which would have exonerated him.[4] "'[E]vidence about the testimony of a putative witness

---

[4]In his reply Petitioner claims Bart and Sempel would have testified that the destination of the cocaine was Amsterdam, not Miami (CV Dkt. 17 at 23). Petitioner fails to demonstrate how said testimony would have exonerated him.

must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.'" *Daniels v. McDonough*, 2006 U.S. Dist. LEXIS 65191, 2006 WL 2620143, at *10 (M.D. Fla. 2006) (quoting *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted)). As such, "to successfully assert that trial counsel should have called a witness, a petitioner must first make a sufficient factual showing substantiating the proposed witness testimony." *Daniels*, 2006 U.S. Dist. LEXIS 65191, 2006 WL 2620143, at *10 (citing *United States v. Schaflander*, 743 F.2d 714, 721 (9th Cir. 1984)). Evidence sufficient to meet this showing includes sworn affidavits from the potential witnesses stating what testimony they would have provided. *Daniels*, 2006 U.S. Dist. LEXIS 65191, 2006 WL 2620143, at *10. "In the absence of the necessary factual showing, Petitioner's mere conclusory allegations are insufficient to warrant finding that trial counsel was ineffective for failing to call these witnesses to testify." *Id.* (citation omitted).

Petitioner fails to provide any evidence substantiating what testimony Bart and Sempel could or would have offered. Petitioner's conclusory allegation that they would have provided testimony which would have exonerated him does not support a finding of ineffective assistance of counsel. Moreover, the record reflects that Petitioner did not meet Bart and Semple and that they only dealt with Yasin Beter (CR Dkt. 98 at 128).

(2) Petitioner claims counsel was ineffective by failing to claim a violation of Petitioner's right to a speedy trial. Petitioner sets forth no facts or argument supporting this claim. Moreover, a court must assess four factors when determining whether a defendant was denied his right to a speedy trial: length of the delay, the reason for the delay, the defendant's assertion of his right, and

16

prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). Petitioner was arrested on January 18, 2001 (CR Dkt. 4). Trial was initially set for March 2001 (CR Dkt. 10). On February 28, 2001, July 17, 2001, August 9, 2001, September 7, 2001, November 9, 2001, February 8, 2002, and March 15, 2002, Petitioner moved to continue his trial. Trial commenced on April 8, 2002. While the trial date was delayed for one year, it is evident that the Petitioner, not the government, delayed the trial date. Furthermore, Petitioner did not assert his right prior to trial, and he shows no prejudice because of the delay of his trial. Therefore, he did not suffer a violation of his right to a speedy trial.

(3) Petitioner asserts that counsel was ineffective on appeal because he failed to adequately brief sentencing issues. As discussed in Ground Six, *infra*, there were no sentencing errors. Therefore, Petitioner can show no prejudice for counsel's failure to adequately brief the sentencing issues on appeal.

(4) Petitioner argues that counsel was ineffective for failing to challenge the Second Superseding Indictment as invalid. As discussed in Ground Two, *supra*, the Second Superseding Indictment was not invalid. Accordingly, Petitioner cannot show counsel was deficient for failing to challenge it, and cannot show prejudice.

(5) Petitioner maintains that counsel was ineffective for failing to challenge the Court's jurisdiction over the case. As discussed in Ground One, *supra*, the Court had jurisdiction, and therefore, counsel was not ineffective for failing to seek dismissal on that ground.

(6) Petitioner claims counsel was ineffective for failing to obtain exculpatory evidence in the prosecution's possession. As discussed in Ground Three, *supra*, Petitioner fails to demonstrate that the prosecution withheld any material exculpatory evidence, and Petitioner fails to allege or show

17

how his counsel was ineffective in dealing with this issue.

(7) Petitioner states that "counsel failed to subpoena Beeper and Celluar [sic] Services providers to establish the validity of the numbers provided to the prosecution by its key witness, Yasin Beter[.]" (CV Dkt. 2 at 19). Petitioner refers to the cellular and beeper numbers for the individual known as "Grizzly" to whom Yasin Beter delivered the cocaine for Petitioner (CR Dkt. 98 at 124). Petitioner asserts that "Grizzly" could have been called as a defense witness to establish whether he ever had dealt with Petitioner (CV Dkt. 2 at 14-15). Petitioner's speculation that "Grizzly" may have testified favorably for Petitioner is insufficient to establish an ineffective assistance of counsel claim for failing to call him as a witness. *See Daniels*, 2006 U.S. Dist. LEXIS 65191, 2006 WL 2620143, at *10. Therefore, Petitioner fails to establish that counsel was ineffective in not subpoenaing the cellular and beeper service providers.

(8) Petitioner asserts counsel was ineffective for failing to "subpoena records of the airlines, hotels, and Western Union companies to support [his] line of defense[.]" (CV Dkt. 2 at 19). "Conclusory allegations of ineffective assistance are insufficient." *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992)(quotation omitted). Petitioner does not argue how these records would support his defense. Therefore, he fails to show counsel's performance was deficient or prejudice.

(9) Petitioner claims counsel was ineffective for failing to adequately impeach the government's witnesses with their prior inconsistent statements. First, he asserts counsel failed to impeach Yasin Beter regarding his testimony about trips Renaldo Van Der Holst and his girlfriend made (CR Dkt. 98 at 129-130). Petitioner fails to articulate the inconsistent statements Yasin Beter made regarding Renaldo Van Der Holst. Nor does he demonstrate or even contend that the jury would have acquitted him absent counsel's alleged deficient performance.

18

Second, Petitioner states counsel failed to impeach Mishkin's statement that Petitioner had told him who supplied him with drugs and how much the drugs cost him, with his subsequent statement that Petitioner did not tell him that information. A review of the record reveals Mishkin did not make inconsistent statements at trial regarding this matter. On April 8, 2002, Mishkin testified "I think the cost [of the cocaine] was 4,000 per kilo to him..." (CR Dkt. 97 at 75). At that time he did not state who supplied Petitioner with the cocaine. On April 9, 2002, Mishkin testified "he told me the actual cost of the kilos that were lost...to him were 4,000 per kilogram" and he stated that Petitioner did not tell him where he was getting his cocaine (CR Dkt. 98 at 32). These statements are not inconsistent.

Third, Petitioner asserts that counsel failed to impeach Agent Grant with his inconsistent testimony regarding information in the database concerning the flights from Aruba to Miami, and his perjurious statements. Here, Petitioner does not identify the inconsistent and perjurious statements allegedly made by Agent Grant. It appears Petitioner is claiming that Agent Grant testified inconsistently or falsely when he stated that he did not see any documentation that indicated Bart and Sempel had plans to return to Amsterdam (CR Dkt. 97 at 144). Petitioner claims the documentation showed that Bart and Sempel planned to return to Amsterdam. Agent Grant did testify that the airline tickets showed Bart and Sempel departing Miami to Amsterdam on January 28, 1998 (CR Dkt. 97 at 143). However, Agent Grant testified that Bart and Sempel changed their flight and left Aruba bound for Miami on January 29, 1998, and that their new tickets did not indicate that they were leaving Miami for Amsterdam (Id. at 138, 144). Therefore, it does not appear Agent Grant made inconsistent statements. Finally, Petitioner does not contend or demonstrate that the jury would have acquitted him absent counsel's failure to impeach Agent Grant. There is no

19

showing of prejudice.

10) Petitioner asserts that counsel was ineffective for failing to object to the Court failing to instruct the jury that it was required to determine the specific quantity of drugs he was accused of importing. The jury was instructed to determine whether the government had proven beyond a reasonable doubt whether Petitioner imported 5 kilograms or more of cocaine (CR Dkt. 63 at 15), and the jury specifically found that he had (CR Dkt. 64). Therefore, Petitioner's ineffective assistance claim is without merit. To the extent that Petitioner argues that the jury was required to make the factual findings supporting guideline-enhancements, that argument is addressed in Ground Six, *infra*.

11-13) Petitioner argues that counsel was ineffective for failing to object to the prosecutor's statements during closing argument: 1) comparing Petitioner to a character in "Oliver Twist"; 2), vouching for Mishkin; 3) stating that Petitioner's employees at the auto repair shop had the ability to manufacture surfboards; and 4) misinterpreting Petitioner's letter to Yasin Beter. As discussed in Ground Four, *supra*, the prosecutor's comments were not improper, and therefore, counsel was not deficient for failing to object to the comments. Further, even if counsel should have objected, Petitioner has not shown prejudice.

14) Petitioner alleges that because counsel did not request a curative instruction regarding the testimony about Yasin Beter's guilty plea, counsel was ineffective and Petitioner was prejudiced. Plea agreements are admissible. *United States v. Hilton*, 772 F.2d 783, 787 (11th Cir. 1985).

> A co-defendant's guilty plea or conviction may be brought out at trial provided that 1) the evidence serves a legitimate purpose and 2) the jury is properly instructed about the limited use they may make of it. *United States v. King*, 505 F.2d 602, 607 (5th Cir.1974); *see also United States v. Countryman*, 758 F.2d 574 (11th

Cir.1985); *United States v. Melton*, 739 F.2d 576, 578-79 (11th Cir.1984); *United States v. Edwards*, 716 F.2d 822 (11th Cir.1983); *United States v. Borchardt*, 698 F.2d 697, 701 (5th Cir.1983); *United States v. Jimenez-Diaz*, 659 F.2d 562, 566 (5th Cir.1981); *United States v. Veltre*, 591 F.2d 347, 349 (5th Cir.1979).

To use one person's guilty plea or conviction as substantive evidence of the guilt of another is improper. *King*, 505 F.2d at 607. Two examples of the proper evidentiary use of such pleas are: 1) to impeach trial testimony; and 2) to reflect on the witness' credibility. *Id.* We have said that when a co-defendant testifies, either the Government or the defense may elicit evidence of a guilty plea or conviction to aid the jury in assessing the co-defendant's credibility. *United States v. Vigliatura*, 878 F.2d 1346, 1348 (11th Cir.1989); *see also Griffin*, 778 F.2d at 710 n. 5. To blunt the impact of "expected attacks on the witnesses' credibility," the Government may disclose guilty pleas of Government witnesses. *Countryman*, 758 F.2d at 577; *Melton*, 739 F.2d at 578-79; *Veltre*, 591 F.2d at 349. We have also permitted the admission of a guilty plea or conviction to prevent the jury from reaching the erroneous inference that a co-defendant whom the evidence shows was also culpable had escaped prosecution, *see United States v. Jimenez-Diaz*, 659 F.2d 562, 565-66 (5th Cir.1981), and to bolster the credibility of the witness, *United States v. Hernandez*, 921 F.2d 1569, 1583    (11th Cir.1991).

*United States v. DeLoach*, 34 F.3d 1001, 1004 (11th Cir. 1994).

Counsel for Petitioner, not the government, raised the issue of Yasin Beter's plea agreement in an effort to impeach the testimony of Beter and Mishkin (CR Dkt. 98 at 39-45; 91-93). Nothing in the record indicates that the government attempted to use Beter's plea agreement as substantive evidence of Petitioner's guilt. Therefore, Petitioner does not show that counsel was ineffective in failing to request a curative instruction.

Even if counsel was deficient for failing to request a curative instruction, Petitioner fails to demonstrate prejudice. Beter testified at trial, and defense counsel had the opportunity to cross-examine him relative to the plea agreement (CR Dkts. 98 at 103-179; 95 at 3-68, 146-150). In addition, the Court informed the jury during jury instructions that "[y]ou should decide whether you believe what each witness had to say, and how important that testimony was. In making that

decision you may believe or disbelieve any witness, in whole or in part...In deciding whether you believe or do not believe any witness I suggest that you ask yourself a few questions:...Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome of the case?" (CR Dkt. 63 at 5).

Moreover, in view of the abundant independent evidence of Petitioner's guilt, trial counsel's failure to request a cautionary instruction did not prejudice Petitioner to the extent that "the result of the proceeding would have been different" had he done so. *Strickland*, 466 U.S. at 694. Any error at trial caused by counsel's failure to request a cautionary instruction was harmless error, considering the evidence supporting Petitioner's guilt. Therefore, defense counsel was not ineffective for failing to request a cautionary instruction. *See United States v. Lehder-Rivas*, 955 F.2d 1510 (11th Cir. 1992); *United States v. Werme*, 939 F.2d 108 (3rd Cir. 1991); *United States v. Terry*, 702 F.2d 299 (2nd Cir. 1983).

15) Petitioner claims his counsel was ineffective for failing to poll the jury following the verdict, and he alleges that "Juror #4, after deliberation, approached the prosecuting attorney with counsel for Nasirun present and inquired as to whether the prosecutor really thought that Nasirun was guilty of the crimes he was tried for[.]" (CV Dkt. 2 at 19-20). The jury was polled, at the Court's direction.[5] Nothing in the record indicates that any juror disavowed or was uncertain of the verdict. Petitioner fails to demonstrate that counsel was deficient for failing to request a poll of the jury or that he suffered prejudice. *See United States v. Costa*, 691 F.2d 1358, 1363-1364 (11th Cir. 1982)("Since there is nothing in the record to indicate any juror was uncertain of the verdict, counsel's failure to request a poll does not fall outside the range of competence expected of attorneys

[5]The polling of the jury was not transcribed.

22

in criminal cases."). Further, even if Petitioner's claim that Juror #4 asked the prosecutor whether he thought Petitioner was guilty were true, this clearly would have taken place after the jury had deliberated, had been polled, and were discharged.

16) Petitioner asserts that his counsel was ineffective for failing "to request curative instructions regarding the admissibility of Mishkin's testimony[.]" (CV Dkt. 2 at 20). Petitioner expounds no further on this claim. Mere conclusory allegations in support of claims of ineffective assistance of counsel are insufficient, as a matter of law, to raise a constitutional issue. *See Hill v. Lockhart*, 474 U.S. 52 (1985)(general allegation of ineffective assistance of counsel is insufficient; petitioner must allege specific facts establishing both unreasonable-representation and prejudice prongs of ineffective assistance standard).

17) Petitioner claims that counsel was ineffective for failing to present evidence that Yasin Beter purchased heroin in the Netherlands. He asserts that had counsel done so, it would have undermined the government's contention that Beter was a child acting solely under the influence of Petitioner. This claim is wholly without merit as Yasin Beter's prior statement was that Petitioner had instructed him to buy 100 grams of heroin in the Netherlands (CV Dkt. 2 at Ex. H, page 3). An attorney cannot be ineffective in avoiding subjects which would have been highly prejudicial to his client.

"[C]ounsel need not pursue every path until it bears fruit or until all available hope withers." *Foster v. Dugger*, 823 F.2d 402 (11th Cir. 1987), *cert. denied*, 487 U.S. 1241 (quoting *Solomon v. Kemp*, 735 F.2d 395, 402 (11th Cir. 1984), *cert. denied*, 469 U.S. 1181 (1985)). "The appropriate legal standard is not error-free representation, but reasonableness in all the circumstances, applying

23

a heavy measure of deference to counsel's judgments." *Id*. Additionally, tactical decisions by counsel seldom form the basis for federal habeas corpus relief. *See Williams v. Kemp*, 846 F.2d 1276, 1281 (11th Cir. 1988), *cert. denied*, 494 U.S. 1090 (1990); *Sanchez v. United States*, 782 F.2d 928, 935 (11th Cir. 1986). Counsel's decision not to introduce evidence that Yasin Beter purchased heroin, when Beter purchased the heroin for Petitioner, cannot be considered ineffective assistance.

18) Petitioner's final ineffective assistance claim is that counsel was ineffective for failing to introduce evidence that Petitioner had made Western Union money transfers to other people in the United States in order to purchase car parts. However, the Western Union transfers Petitioner refers to in support of this claim do not indicate that the money was wired for the purpose of purchasing car parts (CV Dkt. 2 at Ex. I). Moreover, Petitioner testified that he wired money to the United States a number of times to purchase car parts (CR Dkt. 95 at 89-91). Furthermore, because Petitioner had wired money to purchase car parts does not prove that he did not also wire money to purchase cocaine. Petitioner fails to demonstrate that counsel was ineffective or that he was prejudiced because counsel failed to introduce the Western Union wire transfers.

**Ground Six**

Petitioner claims that his counsel was ineffective at the sentencing hearing for failing to object to the Court's imposition of a life sentence. He argues that because the jury never made a determination as to the drug quantity, the life sentence exceeded the statutory maximum. He also claims that counsel was ineffective for failing to raise this issue on direct appeal.

The jury found Petitioner guilty of importing five kilograms or more of cocaine into the United States (CR Dkt. 64). The statutory maximum prison term for importing five kilograms or

24

more of cocaine is life. *See* 21 U.S.C. § 960(b)(1). Therefore, Petitioner's sentence did not exceed the statutory maximum. Accordingly, counsel was not deficient in failing to object to the sentence as exceeding the statutory maximum.

To the extent that Petitioner's claim may be construed as a claim that counsel was deficient for failing to argue that the jury was required to make guideline-enhancement findings, this claim must be denied. At the time of Petitioner's sentencing and appeal, the law did not require the jury to make the factual findings supporting guideline-enhancements. *See United States v. Reese*, 382 F.3d 1308 (11th Cir. 2004). "[R]easonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop[.]" *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994) (quotations and alterations omitted). "To be effective within the bounds set by *Strickland*, an attorney need not anticipate changes in the law." *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995)(citation omitted).

### Evidentiary Hearing

There is no need for an evidentiary hearing as it "plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief." *Broadwater v. United States*, 292 F.3d 1302, 1303 (11th Cir. 2002).

ACCORDINGLY, the Court **ORDERS** that:

1. Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (CV Dkt. 1) is **DENIED.**

2. The **Clerk** is directed to enter judgment against Petitioner, terminate any pending motions, and close this case.

25

**DONE** and **ORDERED** in Tampa, Florida on _March 17th_ , 2008.

_____
JAMES D. WHITTEMORE
United States District Judge

SA:sfc

Copy to:
Petitioner *pro se*
Counsel of Record

26